Filed 1/30/15  Certified for publication 2/25/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ROXANNE B., a Person Coming Under the Juvenile Court Law. | B256416 |
| | (Los Angeles County Super. Ct. No. DK02607) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| MARIA B. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Tony Richardson, Judge.  Affirmed.

David A. Hamilton, under appointment by the Court of Appeal, for Defendant and Appellant Maria B.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant Daniel B.

Richard D. Weiss, Office of County Counsel for Petitioner and Respondent Department of Children and Family Services.

_____

## INTRODUCTION

Mother Maria B. and Father Daniel B. appeal from the juvenile court's judgment finding jurisdiction over their daughter Roxanne under Welfare and Institutions Code[1] section 300, subdivision (c). We affirm because the jurisdictional finding was supported by substantial evidence that Roxanne was suffering from serious emotional damage and at risk of suffering further serious emotional damage at the time of the jurisdiction hearing, and that through their failure to obtain mental health services for Roxanne, Mother and Father caused Roxanne to continue to suffer and be at risk of suffering such emotional damage.

## FACTS AND PROCEDURAL BACKGROUND

Mother and Father (the Parents) live together with their two children, sixteen-year-old Roxanne and her sibling. Only Roxanne is at issue in this child dependency proceeding, as the Department of Children and Family Services (DCFS) did not pursue a petition as to her sibling. In November and December of 2011, Roxanne began exhibiting signs of possible emotional problems. On one occasion, Roxanne cried at school and told her counselor she was upset because Father yelled at her, her sibling, and Mother. DCFS investigated the referral based on this incident, found the allegations of emotional abuse to be unfounded, and indicated to Mother that Roxanne may need counseling. On another occasion, Roxanne told a classmate that she wanted to kill herself and showed the classmate marks on her wrists. DCFS investigated and determined that the allegations of abuse were unfounded because there were no marks or bruises on Roxanne, Roxanne denied any thoughts of suicide, and Roxanne stated that she did not fear her Parents. DCFS again told Mother that Roxanne may have some underlying issues of which she is not making others aware, and may need counseling. DCFS provided Mother with information about counseling services for Roxanne in her area. Beginning in December 2011, the school counselor also urged the Parents to take Roxanne to counseling, but the Parents failed to do so.

---

[1] All subsequent statutory references are to the Welfare and Institutions Code.

Several months later, in March 2012, Roxanne emailed her teachers stating that she had suicidal thoughts because she was being bullied at school. Despite the school counselor's request for Mother to come to school due Roxanne's mental state, Mother did not show up. Only after the school counselor went to the Parents' home, did Mother reluctantly come to school. At school, Mother was unsupportive and angry at Roxanne. Roxanne was then taken by ambulance to a hospital and placed on a section 5585 hold for psychiatric evaluation. In response to Roxanne being taken to the hospital, Mother told the school counselor that she was going to remove Roxanne from the hospital against medical advice. Although Mother took Roxanne to therapy shortly after this incident, Roxanne did not continue with therapy.

Roxanne was hospitalized three more times on October 4, 2013, October 29, 2013, and November 7, 2013, due to her mental health problems. The present dependency proceedings arose out of a referral from the November hospitalization. On November 6, 2013, Roxanne emailed her teachers, stating that she was going to kill herself because no one cared about her. When she arrived at school the morning after she wrote the email, Roxanne continued to express her suicidal thoughts to her counselor. Roxanne was again taken to the hospital and placed on a section 5585 psychiatric hold. At the hospital, Roxanne stated to the DCFS social worker that she was depressed because she was failing classes at school, because her mother was the only one working to support her family, which concerned her, and because everyone looked down at her at school. Roxanne was diagnosed with Major Depressive Disorder.

The school had difficulty contacting both parents regarding Roxanne's suicidal thoughts on November 6 and 7, 2013, and when it finally contacted Mother, she "appeared not [to] care and stated that she could not leave work because no one was going to pay her bills." The hospital social worker as well as Roxanne's school counselor both stated that Mother was not taking Roxanne's mental health problems seriously. After a week in the hospital on the section 5585 hold, Mother still had not visited Roxanne and refused in-home services for Roxanne, stating that "the neighbors are nosy." Upon Roxanne's return home from her 11-day stay at the hospital, Father cursed at Roxanne about her hospitalization,

asserted that she will not be going back to any hospital, and told her that she was not "using her mouth properly" because she was telling strangers about her problems. Father also stated that he felt "alone and abandoned" when Roxanne was at the hospital.

After DCFS became involved in this case in November 2013, Mother made an appointment for Roxanne with a psychiatrist and began taking her to weekly therapy sessions following her hospitalization. Per the hospital social worker's suggestion, Mother also sought to get Roxanne an individualized education plan to help her at school. In the months following her November hospitalization, Roxanne began consistently taking antidepressants and attending counseling services.

DCFS filed its section 300 petition in December 2013, alleging that the Parents caused Roxanne serious emotional damage. DCFS subsequently offered the Parents to pursue a Voluntary Family Maintenance plan without court involvement in February 2014. The Voluntary Family Maintenance plan required the Parents to agree to continue to follow Roxanne's treatment plan and ensure that she attends school. Father voiced his reluctance to be involved in the voluntary plan or any family counseling, but stated he did not want to oppose DCFS. Although Mother initially agreed to a Voluntary Family Maintenance plan, Mother expressed concern that she had to sign another case plan in order to proceed with Voluntary Family Maintenance plan. When the social worker attempted to explain the new case plan and that it would be voluntary, Mother told the social worker that "DCFS is stressing her out and that she's going to get sick." On this same day, Roxanne was very guarded and emotionless when talking to the social worker. Based on the Parents' inconsistent answers and resistance to DCFS, as well as concerns that Mother was making Roxanne feel like she cannot talk freely to DCFS social workers, DCFS decided to proceed with the section 300 petition.

In May 2014, the court found that Roxanne was suffering from severe emotional damage and that the Parents caused some of the emotional harm that Roxanne was experiencing. The court stated that the Parents had "minimized the minor's serious mental health issues," and concluded that Roxanne was a child described by section 300, subdivision (c).

## DISCUSSION

The Parents contend the evidence is insufficient to support the juvenile court's jurisdictional finding under section 300, subdivision (c) because Roxanne was not at risk of suffering nor actually suffering from serious emotional damage, or in the alternative, because they did not cause Roxanne's emotional damage. We review the juvenile court's jurisdictional findings for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966.) "Substantial evidence is relevant evidence which adequately supports a conclusion; it is evidence which is reasonable in nature, credible and of solid value." (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.) Although substantial evidence may consist of inferences, the inferences " 'must be "a product of logic and reason" and "must rest on the evidence" [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations].' " (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393-1394, italics omitted.) Conflicts in the evidence and reasonable inferences are resolved in favor of the prevailing party. (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.) "[I]ssues of fact and credibility are questions for the trier of fact." (*Ibid*.) The juvenile determination will not be disturbed unless it exceeds the bounds of reason. (*Ibid*.)

Pursuant to section 300, subdivision (c), a child comes under the jurisdiction of the juvenile court, if "[t]he child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care. No child shall be found to be a person described by this subdivision if the willful failure of the parent or guardian to provide adequate mental health treatment is based on a sincerely held religious belief and if a less intrusive judicial intervention is available."

"The statute thus sanctions intervention by the dependency system in two situations: (1) when parental action or inaction causes the emotional harm, i.e., when parental fault can be shown; and (2) when the child is suffering serious emotional damage due to no parental fault or neglect, but the parent or parents are unable themselves to provide adequate mental

5

health treatment. [¶] In a situation involving parental 'fault,' the petitioner must prove three things: (1) the offending parental conduct; (2) causation; and (3) serious emotional harm or the risk thereof, as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior." (*In re Alexander K.* (1993) 14 Cal.App.4th 549, 557.) The Parents argue that elements two (causation) and three (serious emotional damage) are not supported by substantial evidence. We address each in turn, beginning with Roxanne's emotional damage.

### 1. Roxanne Was Suffering Serious Emotional Damage and Was at Risk of Suffering Further Serious Emotional Damage at the Time of the Jurisdiction Hearing

Both Parents argue that Roxanne was not at risk of suffering nor suffering from serious emotional damage at the time of the jurisdiction hearing and that the court focused on past events rather than Roxanne's six-month stabilization, in finding jurisdiction. Section 300, subdivision (c) states that emotional damage or risk of emotional damage is "evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others." Here, it is clear that Roxanne was suffering from serious emotional damage in the form of Major Depressive Disorder. Her emotional damage was also evidenced in her suicidal ideations, which the Parents failed to address until DCFS's intervention.

Both Parents assert that Roxanne was not emotionally damaged at the time of the jurisdiction hearing because Roxanne had already been in therapy for six months, was taking her medications, had all appropriate services in place for her mental health needs, did not have another incident of suicidal ideations in months, had a school counselor to talk to when she was not feeling well, was consistently attending mental health sessions, and had Mother's support during her treatment over the last six months. Mother also asserts that the lack of present harm or risk of harm is established by Mother's active involvement in providing for Roxanne's needs fourteen days after DCFS received the referral that is the basis for this dependency proceeding.

Yet the record indicates that Roxanne continued to suffer from Major Depressive Disorder even during the six months that she received treatment leading up to the

6

jurisdiction disposition hearing. The record further shows that without DCFS's and the court's involvement in this case, the Parents were not likely to obtain treatment for Roxanne as the Parents did not take her mental health issues seriously. The Parents only obtained consistent mental health services for Roxanne after DCFS began its November 2013 investigation, despite Roxanne's multiple episodes of suicidal ideations and four hospitalizations, beginning in 2012. The Parents were also reluctant and uncooperative in setting up a voluntary plan for proceeding with treatment for Roxanne. Although Mother has complied with DCFS's mental health care plan for Roxanne and has obtained treatment for her during the last six months, this short period of change does not absolve concerns for Roxanne's safety in the context of almost two years of medical neglect by the Parents, particularly in light of the Parents' inconsistent responses to DCFS's offer to set up a voluntary plan and their resistance toward DCFS in this case. The court had good reason to believe, based on DCFS's experience with the Parents, that the Parents would cause Roxanne even more serious emotional damage by ceasing her treatment and ignoring her obvious mental healthcare needs in the future. Contrary to the Parents' assertions, substantial evidence supports a conclusion that there was a present risk of harm to Roxanne.

We therefore conclude that substantial evidence supported that Roxanne was suffering and was at risk of further suffering serious emotional damage under section 300, subdivision (c).

### 2. The Parents Were a Substantial Cause of Roxanne's Serious Emotional Damage and Their Lack of Concern Placed Her at Risk of Future Emotional Damage

Both Parents argue that even if Roxanne was at risk of suffering or was actually suffering serious emotional damage, the Parents were not a substantial factor in bringing about Roxanne's depression. They state that Roxanne's depression was caused by bullies at school, Roxanne's loneliness, her lack of friends, and her poor coping skills. Mother asserts that Roxanne's "mental health issues would have occurred even if Mother had not delayed in obtaining therapy." Mother asserts that she engaged in no abusive conduct, and that her "only misconduct was the inability to connect [Roxanne] with services due to having to work and refusing in-home services due to the neighbors."

7

Even if bullies, loneliness, or poor coping skills initiated the depression, the Parents caused Roxanne's depression to worsen and persist. (See 1 Seiser et.al., Cal. Juvenile Courts Practice and Procedure (2014) Grounds for Dependency Jurisdiction, § 2.84[4] [Section 300, subdivision (c) "authorizes the taking of jurisdiction . . . where the parent's actions are the cause of the child continuing to suffer the emotional damage . . . ."].) The offending parental conduct here is the Parents' failure to obtain mental health services for Roxanne. The delay in this medical care and the Parents' disregard for their child's needs exacerbated Roxanne's mental health problems and caused her to continue to suffer from depression, as evidenced by her increased incidents of suicidal ideation and hospitalizations. The evidence shows that the Parents did not take her emotional problems seriously, that they did not provide her with consistent access to mental health care, and that Father berated her for seeking such care. It was evident from statements made by the school counselor and social workers to the Parents that Roxanne needed counseling as early as December 2011. Again in March 2012, the Parents were informed of Roxanne's need for counseling. Roxanne's unaddressed depression culminated with her three hospitalizations in October and November 2013 due to her depression and suicidal ideations.

The Parents argue that the October 4, 2013, October 29, 2013, and November 7, 2013 hospitalizations occurred in too rapid succession for them to have enough time to be able to get Roxanne help. Yet, it appears that additional time would not have changed the Parents' conduct. Even during her final hospitalization, the Parents did not display concern about Roxanne's problems, as evidenced by Father's lack of involvement, and by Mother not seeing Roxanne at the hospital and indicating that she did not have time to deal with social workers. And, as stated above, the Parents were on notice of the need to obtain treatment for Roxanne prior to these last three incidents. The Parents' medical neglect of Roxanne clearly caused the depression to go untreated, persist, and worsen.

8

Based on the foregoing, we conclude that the juvenile court's jurisdictional finding is supported by substantial evidence that the Parents' failure to obtain mental health services for Roxanne over a two year period was a substantial factor in causing Roxanne's continuing serious emotional damage. We therefore affirm the jurisdictional finding.

## DISPOSITION

The juvenile court's judgment finding jurisdiction over Roxanne is affirmed.

KITCHING, J.

We concur:

ALDRICH, J.

LAVIN, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/25/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ROXANNE B., a Person Coming Under the Juvenile Court Law. | B256416 |
| | (Los Angeles County Super. Ct. No. DK02607) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |
| Plaintiff and Respondent, | |
| v. | |
| MARIA B. et al., | |
| Defendants and Appellants. | |

THE COURT:

The opinion in the above-entitled matter filed on January 30, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports.

[There is no change in the judgment.]