Filed 1/29/21  In re B.A. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re B.A. et al., Persons Coming Under the Juvenile Court Law. | B304196 (Los Angeles County Super. Ct. No. 19CCJP06766A–B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>V.A.,<br><br>　　　Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge. Affirmed as modified.

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, Aileen Wong, Senior Deputy County Counsel, for Plaintiff and Respondent.

## I.  INTRODUCTION

V.A. (mother) appeals from a dispositional order of the juvenile court that exercised dependency jurisdiction over her children, B.A. and E.A., pursuant to Welfare and Institutions Code[1] section 300, subdivisions (b)(1) and (c).  Mother argues that one of the grounds for dependency jurisdiction, emotional abuse, was not supported by substantial evidence.  Mother further argues the juvenile court abused its discretion by ordering a mental health assessment as part of her case plan.

We find the juvenile court erred by exercising jurisdiction over one of the children, E.A., pursuant to section 300, subdivision (c), as that basis for jurisdiction was never alleged in the dependency petition.  We will modify the juvenile court's jurisdictional finding as to that child.  We otherwise affirm.

---

[1]  Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## II.  BACKGROUND

A.    *The Dependency Petition*

On October 18, 2019, the Department filed a dependency petition pursuant to section 300, subdivisions (b)(1) and (c) that alleged, as amended and as sustained, the following counts:

"b-1 . . .

"The children['s] mother . . . is a current user of methamphetamine and marijuana which renders [ ] mother incapable of providing regular care of the children.  On prior occasions in 2019, [ ] mother was under the influence of marijuana while the children were in [ ] mother's care and supervision.  [M]other has a criminal history of V[ehicle ]C[ode]-Driving Under the Influence [of a] Drug.  [M]other's substance abuse endangers the children's physical health and safety and places the children at risk of serious physical harm, damage, and danger.

"b-2 [and c-1]

"The child [B.A.'s] mother . . . emotionally abused the child by exposing [her] to the parents' custody dispute.  [M]other made false allegations of sexual abuse against [ ] father.  On 09/05/2019, [ ] mother requested the child be subjected to an interview with professionals and requested a medical exam regarding the allegations made by mother.  The child [B.A.] is experiencing emotional distress including suicidal ideation and cognitive dissonance due to [ ] mother's emotional abuse of the child.  Such emotional abuse of the child by [ ] mother places the child at substantial risk of suffering serious harm and/or

3

emotional damage as evidenced by severe anxiety, depression, withdrawal, and aggressive behavior.[2]

"b-3 . . .

"The children['s] father . . . has a history of substance use and is a current user of alcohol while taking psychotropic medications. On prior occasions in 2019, [ ] father was under the influence of alcohol while the children were in [ ] father's care and supervision. Mother . . . knew of [ ] father's substance abuse and failed to protect the children. [F]ather's substance use and [ ] mother's failure to protect endangers the children's physical health and safety and places the children at risk of serious physical harm."[3]

B.      *Detention Report and Detention Hearing*

On or about September 4, 2019, the Department received a referral for general neglect by mother. The reporting party stated that mother and father were engaged in divorce proceedings and father had primary custody of the children, 12-year-old B.A. and 10-year-old E.A., pursuant to a family law order. The reporting party was notified by a student that on August 30, 2019, B.A. had sent text messages stating that she wanted to kill herself and mother was aware of her suicidal

---

[2]      For count c-1, the Department alleged B.A. was at "substantial risk of suffering serious emotional damage."

[3]      Father entered a no contest plea and does not appeal.

thoughts.[4] B.A. was absent from school on September 3 and 4, 2019. The reporting party contacted mother, who denied that B.A. had thoughts of killing herself, but added, "'it's tough love; I talked her out of it.'" The reporting party offered mother services and referrals for assessment, but mother declined.

On September 5, 2019, two social workers spoke with mother. Mother stated she only became aware of B.A.'s suicidal ideation earlier that day. Mother declined to comment about whether she had any mental health issues. During her conversation with the social workers, mother spoke rapidly, failed to answer questions directly, and fluctuated in her mood, becoming "very angry, emotional, and agitated."

The social workers interviewed B.A., who reported that on August 30, 2019, mother accused father of inappropriately touching the children. B.A. denied such abuse. B.A. also denied wanting to harm herself but admitted to having told mother, when B.A. was in the fifth grade, that she had thoughts of killing herself.

The social workers interviewed E.A. at her school. E.A. explained that B.A. was "'emo,'" "pretty dark," and listened to music with lyrics about wanting to die. E.A. denied any sexual abuse.

On September 6, 2019, a social worker received a call from B.A.'s school. The reporting party, a counseling intern, had

---

[4] B.A.'s text messages to the other student included: "[m]y mom said I might not make it to 15 . . ."; "it's cuz I might kill myself"; "[s]he knows that I want to kill my self [sic]"; "I don't need help and what if I didn't make it to 15 what u do?"; "I feel like it's going to happen"; and "If I really need to talk to you I'll call u or face time idk . . . but rn I'm ok not that much but I'm ok and look I'm still alive . . . ."

received a phone call from mother. Mother stated that she suspected father was sexually abusing the children and took the children to the emergency room so that they could be administered "rape kits." The children were interviewed by law enforcement officers and denied abuse. The officers did not suspect sexual abuse. During the telephone call, mother seemed "'out of it.'" She "sp[oke] fast and all over the place."

A social worker spoke with a police officer who responded to the hospital. Mother told the officer that she believed father had sexually abused the children because one of the children drew a picture with two stick figures and one stick figure had an arm that did not look like an arm. Mother threw away the drawing and therefore could not show it to the officer. Both children denied being abused. The officer advised mother that because the children denied having been raped, rape kits would not be administered to them. The officer directed mother to return the children to father.

On September 11, 2019, a social worker spoke with paternal grandmother, who reported that father had primary custody of the children. In paternal grandmother's view, mother emotionally abused the children by accusing father of sexually abusing them, instructing B.A. to sleep with a bat under her pillow, and threatening to take the children away from father's home.

During a child family therapy meeting, father expressed concerns about mother. According to father, mother discussed custody-related issues with the children, was paranoid, and used drugs.

At an October 21, 2019, detention hearing, the juvenile court found a prima facie case that the children were minors

6

described in section 300, subdivision (b)(1), and that B.A. was also a minor described in subdivision (c). The court ordered the children detained from mother and released to father's sole custody.

## C.    *Jurisdictional/Dispositional Report*

B.A. told a dependency investigator that on August 30, 2019, mother and paternal grandmother argued when mother accused father of inappropriately touching the children. Paternal grandmother asked B.A. three times whether father had inappropriately touched her. B.A. denied abuse each time. The questioning caused B.A. to cry. After the argument with paternal grandmother, mother told the children, "'[w]e're never coming back here[,]'" referring to father's home.

B.A. also told the investigator that on September 5, 2019, mother took the children to the hospital because she did not believe B.A.'s statement that she had not been raped. The trip to the hospital and the interview by the police upset B.A., who, upon returning home from the hospital, went into her room and cried, reporting, "'it was a long day for me' and . . . a 'lot of people were talking to us.'" B.A. initially denied having thoughts of harming herself but then admitted that she "'[m]aybe'" did have thoughts about ending her life. She further explained that she most recently felt suicidal on September 5, 2019, while at the hospital, because: "'There was too much going on. I didn't want to be there. I was frustrated, kind of depressed.'"

Father told the dependency investigator that he noticed behavioral changes in mother that led him to suspect she was using drugs, such as when she accused father of sleeping with

mother's cousin and molesting the children. Father did not see mother often. He wanted primary custody of the children because mother was "'unpredictable, moving from place to place, emotionally unstable.'" As reported by father, the family law judge ordered the children placed in father's primary custody because the judge "'didn't think [mother] was mentally fit'" based on mother's conduct in court, which included "being 'real fidgety, and real emotional.'" Father reported that after their separation, mother told him she experienced depression and heard voices.

D.    *Interim Review Report*

On November 15, 2019, mother appeared for a hearing and denied the allegations in the dependency petition. The dependency investigator interviewed mother following the hearing. Mother said that she grew up in a dysfunctional and violent household and both of her parents abused drugs. She was distraught during the interview and did not want to talk about the issues in the case. Mother reported that she experienced depression from around 2017 to 2018, but had not sought medical treatment. She declined to further discuss the details of her depression.

Mother believed B.A.'s statements of suicidal ideation were "taken 'out of context.'" She also believed that her allegations of sexual abuse were a family matter and not relevant for the court's consideration.

8

E.      *Jurisdictional/Dispositional Hearing*

At the January 8, 2020, jurisdictional and dispositional hearing, the juvenile court sustained the allegations, finding "[t]he children are persons described by . . . section[] 300[, subdivisions] (b) and (c)."  The court then issued minute orders that stated each child was "a person as described by [section] 300 subdivision(s):  (b), (c)."

The juvenile court found by clear and convincing evidence that the children's physical health and safety would be at substantial risk if they remained in mother's home and issued a dispositional order removing the children from mother's home and placing them in father's home.  The court ordered that mother, as part of her case plan, participate in a mental health assessment, among other requirements.

## III.  DISCUSSION

A.      *Justiciability*

Mother appeals the juvenile court's sustaining of counts b-2 and c-1.  The Department has filed a motion to dismiss mother's appeal, arguing that because mother does not appeal the court's jurisdictional findings as to counts b-1 and b-3, her appeal is not justiciable.  The court's finding that both children are subject to jurisdiction based upon mother's emotional abuse could adversely affect mother's future custody and visitation rights.  (See Fam. Code, §§ 3011, 3020, 3040 [factor to consider when determining best interest of child for custody award includes child's health, safety, and welfare]; see also *id.*, § 3027.5 [knowingly false

9

accusation of sexual abuse by parent may result in that parent's loss of custody or visitation rights].)  We therefore deny the Department's motion and exercise our discretion to consider mother's challenge on appeal.  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 763 [generally, an appellate court will exercise its discretion to reach the merits of a challenge to any jurisdiction finding if that finding "'could have other consequences for [the appellant], beyond jurisdiction'"].)

B.      *Finding that E.A. is Minor as Described in Section 300, Subdivision (c)*

        Mother contends the juvenile court erred by finding E.A. was subject to jurisdiction under section 300, subdivision (c).  The juvenile court sustained the amended allegations in the dependency petition and found that both children were minors as described in section 300, subdivisions (b)(1) and (c).  At a contested jurisdictional hearing, a juvenile court is tasked with determining whether the allegations of the dependency petition have been proven by a preponderance of the evidence.  (Cal. Rules of Court, rule 5.684(a); § 355.)  Moreover, "[n]otice of the allegations upon which the deprivation of custody is predicated is fundamental to due process.  [Citations.]  Accordingly, a parent must be given notice of the specific factual allegations against him or her with sufficient particularity to permit him or her to properly meet the charge."  (*In re J.T.* (1974) 40 Cal.App.3d 633, 639; accord, *In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1035–1036.)

        Here, the amended petition's allegations in counts b-2 and c-1 pertained to B.A. only.  Further, neither the Department nor

10

the juvenile court amended the petition to allege that E.A. was also subject to the court's jurisdiction pursuant to section 300, subdivision (c).  (See *In re G.B.* (2018) 28 Cal.App.5th 475, 485.)  Thus, the court erred in finding that section 300, subdivision (c) supported the court's exercise of jurisdiction over E.A., and we will modify the jurisdictional findings accordingly.[5]  (See Code Civ. Proc., § 43.)

C.      *Substantial Evidence Supports Counts B-2 and C-1*

Mother additionally challenges the juvenile court's jurisdictional finding that she emotionally abused B.A. as alleged in counts b-2 and c-1.  "'In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them.  [Citation.]  In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'"  (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Section 300, subdivision (c) "'sanctions intervention by the dependency system in two situations:  (1) when parental action or inaction causes the emotional harm, i.e., when parental fault can be shown; and (2) when the child is suffering serious emotional damage due to no parental fault or neglect, but the parent or

---

[5]      E.A. remains subject to the juvenile court's jurisdiction under section 300, subdivision (b)(1) pursuant to counts b-1 and b-3.  Mother does not challenge the court's sustaining of these counts on appeal.

11

parents are unable themselves to provide adequate mental health treatment.  [¶]  In a situation involving parental "fault," the petitioner must prove three things:  (1) the offending parental conduct; (2) causation; and (3) serious emotional harm or the risk thereof, as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior.'" (*In re Roxanne B.* (2015) 234 Cal.App.4th 916, 921; *In re Alexander K.* (1993) 14 Cal.App.4th 549, 557.)

Section 300, subdivision (b)(1) provides for juvenile court jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."

We find substantial evidence supports the juvenile court's sustaining of counts b-2 and c-1, which, as we discussed above, alleged grounds for exercising jurisdiction over B.A. only.  The record supports a finding that mother engaged in offending conduct:  She discussed custody-related issues in front of the children, threatened to take the children from father's custody, and on August 30, 2019, told the children that they would never return to father's home.  Further, and despite the children's denial of abuse, mother accused father of sexually abusing the children, repeated the allegation to paternal grandmother, and took the children to a hospital for the administration of rape kits.

The record also supports a finding that mother's conduct caused B.A. to be at risk of serious emotional and physical harm. B.A. reported being upset on August 30, 2019, when mother and paternal grandmother argued about mother's allegations of sexual abuse.  She also reported feeling depressed and suicidal on September 5, 2019, when mother took the children to the

12

hospital. Finally, B.A.'s text messages supported an inference that she had thoughts of killing herself. (See *In re Roxanne B., supra*, 234 Cal.App.4th at p. 921 [finding "emotional damage was also evidenced in [the child's] suicidal ideations"]; *In re I.J.* (2013) 56 Cal.4th 766, 773 ["'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child'"].)

D.      *Dispositional Order—Mental Health Assessment*

Mother also contends the juvenile court erred by ordering that she undergo a mental health assessment as part of her case plan. "The juvenile court has 'wide latitude' in formulating reasonable disposition orders for the care, custody, support, and well[-]being of juvenile dependents." (*In re K.T.* (2020) 49 Cal.App.5th 20, 24; *In re Jasmin C.* (2003) 106 Cal.App.4th 177, 180.) "If a child is adjudged a dependent child of the court on the ground that the child is a person described by [s]ection 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child . . . ." (§ 362, subd. (a).) Section 362, subdivision (d) provides: "The juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings . . . as the court deems necessary and proper to carry out this section . . . ." "The court's broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise

13

to the dependency proceedings." (*In re K.T., supra,* 49 Cal.App.5th at p. 25; *In re Drake M., supra,* 211 Cal.App.4th at p. 770.)

We find no abuse of discretion. Mother admitted to suffering from depression in 2017 and 2018. Father confirmed mother's statements about her depression, and further reported that mother said she heard voices. Mother did not see a doctor or receive any treatment for these issues. The juvenile court could have reasonably concluded that ordering a mental health assessment for mother would serve "the care, supervision, custody, conduct, maintenance, and support of the" children.

## IV. DISPOSITION

The motion to dismiss the appeal is denied. The jurisdictional findings are modified to reflect that E.A. is not a person described under section 300, subdivision (c). As so modified, the jurisdictional findings and dispositional order are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

MOOR, J.

15