Filed 4/9/25  In re A.L. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | B335909<br>(Los Angeles County Super. Ct. No. 23CCJP03887A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>D.C.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court Los Angeles County, Cathy Ostiller, Judge.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel and Avedis Koutoujian, Deputy County Counsel, for Plaintiff and Respondent.

_____

D.C. (mother) challenges the juvenile court's order declaring A.L. (minor) a dependent under Welfare and Institutions Code section 300, subdivisions (b)(1) and (c).[1] Respondent Los Angeles County Department of Children and Family Services (Department) contends the appealed jurisdictional findings are supported by substantial evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Mother and J.G. (father) are the parents of minor, born in September 2014.[3] During the relevant time frame, mother and father shared custody of minor under a family law order, with minor spending Tuesdays and Thursdays from after school until

_____

[1] All statutory references are to the Welfare and Institutions Code, unless stated otherwise.

[2] Consistent with our standard of review, we state the facts in the light most favorable to the juvenile court's findings, resolving all conflicts and drawing all reasonable inferences to uphold the court's order, if possible. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

[3] Father has not appealed.

6:30 p.m. and every other weekend from Friday to Monday with father.  All other times were with mother.  The parents exchanged custody outside a police station.

*Initial allegations and interviews*

The Department began the current investigation in October 2023, after a referral alleging mother physically abused minor by hitting him on the leg.  In his first interview with a social worker, minor reported he had been sleeping, and mother woke him up screaming "I'm tired of this fucking shit" and hitting him on the leg.  Minor reported that "mother was mad because of the court things."  Minor began to cry and mother told him to go back to sleep.  Minor felt safe and comfortable at home with mother, but wanted to spend more time with and live with father.

Mother told the social worker father was using the child welfare system and law enforcement as a weapon against her.  Minor had behavioral issues; he would call mother a "fuckin['] bitch" and hit her when he was upset.  Mother was scared to correct minor because he would constantly threaten to report that mother hit him, even though she did not.  Mother was concerned about minor and believed he needed help to manage the family dynamic.  Maternal cousin was also concerned about minor because he was displaying signs of emotional distress such as having a blank stare and being violent.  The cousin felt minor was stuck in the middle of the parents' resentments, and she felt minor made it difficult for mother to correct his behavior because he was constantly threatening to tell his dad that mother hit him, even though mother did not hit minor.

After father complained that the social worker was taking mother's side and calling minor a liar, the Department agreed to conduct a second interview using different social workers. During the second interview, minor stated his parents did not get along and that his mother thought his father was "coaching" him, but that was not true. Departing from statements made to the first social worker, minor now stated that mother "is 'abusing' and 'intimidating' him and tells him to lie to police and social workers. [Minor] stated he loves both his parents but feels safer with his father." Minor added that mother screams and curses at maternal grandmother and spanks minor's two year old half-sister. Minor stated he was tired of talking to police and social workers.

Minor's elementary school principal said the parents' relationship was volatile. Minor's teacher described minor as bright and capable, but also said he was physical with other students and sometimes a pathological liar. The teacher said mother and father made allegations against each other and were using the child in the middle of their issues. Minor had never mentioned any abuse by parents to either the teacher or the principal.

A mental health clinician conducting a phone evaluation on October 23, 2023 was concerned about minor's behavior, as mother reported minor had slapped her in the mouth the day before, and minor was throwing things at mother and giving her the middle finger during the interview. The clinician observed mother to be overwhelmed. The clinician recommended intensive behavioral intervention services and wraparound services for minor, and also services for mother out of concern for mother's

4

stress levels and mother's belief that she was being watched by father.

Minor's doctor reported to the social worker that minor was seen on five separate occasions between October 23 and November 1, 2023. Mother and father attended the visits separately. Medical staff was concerned about minor's emotional state, and the doctor had observed minor acting aggressively with mother and then denying that he hit mother despite the doctor having observed him doing so. Minor had also stated mother and an older sibling had hit him.

*Medications*

Based on reports from mother and father, minor was likely prescribed medication for ADHD after the Department began its investigation. Father did not consent to administering medication to minor, and minor's version of events evolved over time. Minor first told father and the social worker that he had been strapped down and forced to take medications. Minor later denied that he had made any such statements or had even spoken to a social worker. Still later, when the social worker was informing father about minor's denial, minor interrupted and contradicted the social worker's account, stating " 'that they tied him up with a rope.' " While father reported to the social worker that he had taken minor to the emergency room for dizziness, diarrhea, and vomiting after being forced to take medication, mother denied giving minor any medication in the past week, and also denied forcing minor to take medication.

*Psychiatric hospitalization*

On November 2, 2023, minor was taken by police to Olive View-UCLA psychiatric emergency room after hitting mother with a baseball bat. Mother called the social worker to report she was in emotional distress and was driving behind the police car. A police detective who was already working with the family based on father's prior child abuse reports expressed "strong concerns" about minor's emotional well-being, noting he was "acting out in aggressive behaviors." The detective had called father to inform him of minor's actions, along with mother's report that minor had tried to attack her with knives, but reported "that father was not shocked at child's behavior and did not seem to care if mother was injured." Minor was discharged on November 3, 2023, after being observed with a calm demeanor and stating he had been playing baseball with a friend in the house, had hit mother accidentally, and was remorseful.

The social worker interviewed mother and minor privately at mother's home on November 3, 2023. Mother and minor separately recounted that they got into an altercation after mother took a phone away from minor, causing him to become upset. Minor started hitting mother with his hands, and then picked up a bat and was hitting her with the bat. Mother became scared and called the police, who took minor to Olive View. Minor reported that at the hospital, he was in a room alone, and it felt good to be alone. He liked being in the hospital, the room had a nice bed, and he got to watch cartoons. Minor also told the social worker about an earlier incident where, after watching a cartoon, he put tape over his eyes and mouth and was walking around with knives to scare people in the home. Mother

separately confirmed the incident and showed the social worker a video of minor holding butter knives, with blue tape over his mouth and eyes.

Mother was worried about minor's challenging behaviors, explaining that he has run out into the street, would start hitting her if she tried to prevent him from leaving the home, and would touch things even after she warned him they were hot and he could burn himself. Discussing a safety plan to mitigate minor's violent behaviors, mother agreed to have minor go to his father's home for the weekend, starting that afternoon, even though she did not want minor to be with father for longer periods of time.

*Petition and hearing*

The Department filed a petition on November 13, 2023, alleging minor was a dependent under section 300, subdivisions (b)(1) and (c). Both counts were based on the parents' ongoing custody dispute and continuing accusations against each other of coaching, abuse, or neglect of minor, and alleged that minor had been subjected to numerous interviews with medical and mental health professionals, social workers, and law enforcement, and that minor had been placed "at substantial risk of suffering serious emotional damage as evidenced by severe anxiety, depression, withdrawal and aggressive behavior towards self and others."

At the adjudication hearing in January 2024, mother's counsel asked the court to dismiss mother from both counts. The court sustained both counts against both parents, with some amendments. The sustained b-1 count alleged that minor was "subjected to numerous interviews with social workers, law

7

enforcement officers, medical professionals and mental health professionals, as a result of ongoing allegations of abuse or neglect to the child by both parents.  The father has spoken negatively about the mother in the presence of the child and the mother has spoken negatively about the father in the presence of the child.  The child reported feeling sad being in the middle of the parents' custody dispute.  The detrimental and endangering situation created for the child by the mother and father, places the child at substantial risk of suffering serious emotional damage as evidenced by severe anxiety, depression, withdrawal and aggressive behavior towards self and others."

As amended, the c-1 count stated:  "[Mother and father] placed the child in a detrimental and endangering situation and emotionally abused the child.  Such emotional abuse consisted of the child's parents subjecting the child to numerous interviews by law enforcement, [the Department], and medical professionals regarding allegations of abuse of the child by the mother.  The father discusses the allegations of abuse by the mother in front of the child.  Furthermore, the father's allegations of abuse of the child by the mother remain unsubstantiated.  The child has been taken to urgent care multiple times and has been interviewed by law enforcement and filed several police reports for alleged assaults by mother [] or half sibling [G.].  Law enforcement has designated one law enforcement officer to handle the father's continued complaints against the mother.  The parents have engaged in a contentious custody battle with ongoing turmoil and stress for the child.  Such conduct by the child's mother and father places the child at substantial risk of suffering serious emotional damage as evidenced by severe anxiety, depression, withdrawal and aggressive behavior towards self and others.  The

8

detrimental and endangering situation created for the child by the mother and the father, and the parents' ongoing emotional abuse of the children, places the child at substantial risk of suffering serious emotional damage as evidenced by severe anxiety, depression, withdrawal and aggressive behavior towards self and others." At disposition, the court ordered the parents to participate in services and a mediation to assist with resolving disputes over custodial time. Mother appealed.

## DISCUSSION

Mother contends the evidence is insufficient to sustain the juvenile court's jurisdictional findings under section 300, subdivisions (b) and (c). Mother acknowledges that father has not appealed either jurisdictional finding, but asks us to review the evidentiary support for the findings against her. While mother does not contest that minor suffered serious emotional harm, she argues that father caused the harm, and the court erred in sustaining the section 300, subdivision (c), finding against both parents, rather than against father alone. She also claims there is nothing in the record to support the conclusion that minor has suffered or is in danger of suffering serious physical harm, a necessary prerequisite for a jurisdictional finding under section 300, subdivision (b).

## A. __Justiciability__

It is well settled that juvenile court jurisdiction attaches to children, not their parents. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491 (*I.A.*).) As a general rule, a jurisdictional finding as to

one parent is good as to both.  (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308.)  Regardless of the outcome of mother's appeal, the juvenile court will continue to exercise jurisdiction over minor.  However, this court retains discretion to address the merits of a challenge to a jurisdictional finding, even if overturning that finding will have no immediate effect on the assertion of jurisdiction.  (*I.A., supra*, 201 Cal.App.4th at pp. 1494–1495.)  Although "no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal," (*In re D.P.* (2023) 14 Cal.5th 266, 287 (*D.P.*)) appellate courts often reach the merits when a juvenile court's jurisdictional findings could have consequences for the appellant beyond jurisdiction, or when a challenged finding "is based on particularly pernicious or stigmatizing conduct."  (*Id*. at pp. 285–286.)

Mother contends her appeal is not moot because the sustained jurisdictional findings against her will have implications in future family law and dependency proceedings.  She alternatively asks us to exercise our discretion to review the merits of her appeal even if it is moot.

We disagree that mother has identified "a specific legal or practical consequence that will be averted upon reversal," that would require us to review an otherwise moot question.  (*In re D.P., supra*, 14 Cal.5th at p. 266.)  The court's disposition order kept the custody arrangement between mother and father the same, and the possibility that mother would be impacted by the sustained findings in future family law proceedings is negligible, because the findings are against both mother and father.  "[T]he juvenile court must never, for illegitimate tactical reasons, become a new front in a family law war."  (*In re D.B.* (2020) 48

10

Cal.App.5th 613, 622.) Nevertheless, given the nature of the jurisdictional allegations, we exercise our discretion to reach the merits of her appeal.

" 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We limit our focus to the evidence in support of the finding under section 300, subdivision (c).

## B. Substantial evidence that parents' volatile relationship caused serious emotional harm

We review the juvenile court's jurisdictional findings for substantial evidence. " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them." (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) " ' "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.]" ' " (*Ibid*.) "Substantial evidence must be of ponderable legal significance. It is not synonymous with 'any' evidence. [Citation.] The evidence must be reasonable in nature, credible, and of solid value." (*In re Dakota H.* (2005) 132

Cal.App.4th 212, 228.) " ' "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." ' " (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.)

The purpose of juvenile law "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2, subd. (a); see also *In re Nolan W.* (2009) 45 Cal.4th 1217, 1228 [the "goal of dependency proceedings is to safeguard the welfare of California's children"].)

Under section 300, subdivision (c), a juvenile court may exert dependency jurisdiction if the child "is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others." This jurisdictional ground authorizes intervention by the juvenile court in two situations: "(1) when parental action or inaction causes the emotional harm," that is, "when parental fault can be shown; and (2) when the child is suffering serious emotional damage due to no parental fault or neglect, but the parent . . . [is] unable [herself] to provide adequate mental health treatment." (*In re Roxanne B.* (2015) 234 Cal.App.4th 916, 921 (*Roxanne B.*).) In the first situation involving parental fault, the Department must prove (1) serious emotional damage suffered by the child, (2) offending parental conduct, and (3) causation. (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379; *Roxanne B.*, at p. 921.)

12

Mother acknowledges that there was evidentiary support in the record for the juvenile court's finding that minor was suffering serious emotional damage. Mother also admits that there was evidence to support that *father* engaged in the emotionally abusive tactics alleged in the petition. Nonetheless, mother contends there was no substantial evidence to support a finding that *she*—rather than father alone—had caused emotional harm to minor.

Mother's argument highlights the facts supporting father's culpability in causing minor's emotional distress, but we are unconvinced by her argument that there was no substantial evidence that she too acted in ways that contributed to minor's emotional harm. Mother's argument ignores the fact that it was the conflict-laden dynamic between herself and father that either caused, contributed to, or aggravated minor's emotional harm. The Department's investigation started after minor reported that mother came into his room at night and hit and cursed at him. Mother acknowledged that minor needed help with the family dynamic, and that she was scared to correct minor because minor would threaten to accuse her of violence. There was substantial evidence that the relationship between mother and father was volatile and they were unable to coparent minor. School personnel described the parent's relationship as volatile and that the parents put the child in the middle of their conflict. Minor also reported the conflict between the parents to the social worker and that it made him sad to be in the middle.

Despite minor demonstrating increasingly volatile and aggressive behaviors, mother and father had not been able to reach agreement on medication for minor, so mother had not

given minor prescribed ADHD mediation even though minor was hospitalized for hitting mother with a baseball bat.

The foregoing constitutes substantial evidence to support the court's decision to sustain the section 300, subdivision (c) allegation against both parents, rather than against father alone.

## DISPOSITION

The juvenile court's order is affirmed.
NOT TO BE PUBLISHED.


MOOR, J.


We concur:



HOFFSTADT, P. J.



BAKER, J.