Filed 8/21/25  In re Valerie H. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re VALERIE H. et al., Persons Coming Under the Juvenile Court Law. | B338866 (Los Angeles County Super. Ct. No. 24CCJP01213A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. A.H., Jr., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Pete R. Navarro, Commissioner. Affirmed.

Zaragoza Law Office and Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

A.H., Jr. (father) appeals the juvenile court's exertion of dependency jurisdiction over his three children. Because the court's findings are supported by substantial evidence, we affirm.

## FACTS AND PROCEDURAL HISTORY

I.     **Facts**

A.     *The family*

Father married J.M. (mother) in 2009. They have three children—Valerie (born March 2010), Zoey (born April 2012), and Michael (born January 2023). Father and mother split up in November 2022 when father's infidelity came to light. Mother and father did not obtain a formal custody order, and instead verbally agreed to share physical custody of the children, with mother having primary custody.

B.     *Father's visitation*

Over the course of visits in 2023 and 2024, father's relationship with Valerie and Zoey deteriorated. Father and Valerie would argue; during those arguments, father would scream and curse at Valerie, would criticize her and call her

2

names like "dickhead," and would pull her hair and hit her on the buttocks with his hand.  Father was aware that Valerie had experienced urges to engage in self-harm, and told her to "get over it" and "grow a heart."  Father and Zoey would also argue; during those arguments, father would also scream and curse at Zoey and once hit her with a hairbrush hard enough to leave a mark.

As a result of these encounters, Valerie and Zoey did not feel safe with father, became "really scared" of him, and resisted further visits.  When the girls expressed a reluctance to visit and became "very nervous" and depressed at the prospect of future visits, father cursed at them, stated he was no longer their father, and told them that he was having suicidal thoughts because they did not want to see him.

During a January 2023 visit, father drove erratically—at 80-90 miles per hour in heavy rain—on the freeway during a trip to San Diego.

During a visit in February 2024, father invited the girls to accompany him and his new girlfriend to a mountain resort town.  When they expressed reluctance to go, father started yelling and driving in an unsafe manner by driving over twice the speed limit and running red and yellow lights.  When father screamed at Valerie, Valerie screamed back.  He eventually screamed at Valerie to "get the fuck out of [his] car."  When Valerie and Zoey got out of the car, both were crying and Zoey was visibly "shaky" and "scared."

In April 2024, father pulled into a Starbucks parking lot to meet the girls but drove erratically, scaring Zoey.

Father denied ever hitting the girls or pulling their hair, minimized the allegations against him, and assigned blame for

his soured relationship with Valerie and Zoey to the girls and mother.

## II.    Procedural Background

On April 18, 2024, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Valerie, Zoey and Michael because (1) father placed all three children "in a detrimental and endangering situation" by "dr[iving] recklessly . . . and screaming at . . . Valerie" while Valerie and Zoey were passengers, and that this conduct "places" all three children "at risk of physical harm, damage and danger" (thereby warranting the exercise of jurisdiction under subdivisions (b) and (j) of Welfare and Institutions Code section 300);[1] (2) father "emotionally abused" Valerie "by denigrating [her] and frequently speaking to [her] in a harsh and abusive manner," despite being "aware of [her] self-harming ideation and behavior," and that such "emotional abuse . . . places [her] at substantial risk of suffering serious emotional damage" (thereby warranting the exercise of jurisdiction under subdivision (c) of section 300); and (3) father "emotionally abused" Zoey by "frequently speaking to [her] in a harsh and abusive manner," and that such "emotional abuse . . . places [her] at substantial risk of suffering serious emotional damage" (also warranting the exercise of jurisdiction under subdivision (c) of section 300).

The juvenile court held the jurisdictional and dispositional hearing on June 13, 2024.  At the outset of the hearing, father stated he was "submitting on the . . . count involving the emotional abuse of Valerie," explaining that he was doing so

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

4

because he "take[s] responsibility and acknowledges the fact that he should have handled past situations with Valerie differently." Father asked the court to dismiss the other counts and to interlineate the count involving Valerie's emotional abuse to delete the specific names he called her. The court sustained all the counts as pled. The court ordered the children released to the parents' custody and ordered family maintenance services.

Father filed this timely appeal.

## DISCUSSION

Father argues that the juvenile court's jurisdictional findings are not supported by substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*) [reviewing jurisdictional findings for substantial evidence].) As a threshold matter, father's challenges to the exertion of jurisdiction over Valerie are not justiciable because father's submission to the Department's recommendation before the juvenile court conceded the sufficiency of the evidence underlying that specific emotional abuse count (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 565 [submission to Department's "recommendation" waives right to appeal, while submitting to the Department's "report" does not]; *In re M.C.* (2023) 88 Cal.App.5th 137, 150 [same]), and because that solitary ground for jurisdiction over Valerie renders it unnecessary to consider the other grounds as to her (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491, overruled on other grounds by *In re D.P.* (2023) 14 Cal.5th 266, 277). For the parties' sake, we will nevertheless address jurisdiction as to all three children.

## I.     Failure to Adequately Protect

Dependency jurisdiction is appropriate under section 300, subdivision (b) where a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm

5

or illness" due to a parent's "failure or inability . . . to adequately supervise or protect the child." (§ 300, subd. (b)(1)(A).) If one child has been "abused or neglected" within the meaning of subdivision (b) of section 300, jurisdiction is appropriate for the child's other siblings if "there is a substantial risk that the [sibling] will be abused or neglected." (§ 300, subd. (j).)

Substantial evidence supports the juvenile court's finding that Valerie, Zoey and Michael were at risk of harm due to father's repeated instances of reckless and dangerous driving when he is upset or arguing with the children. (See *In re L.W.* (2019) 32 Cal.App.5th 840, 850 [mother's reckless driving due to substance abuse poses risk to children warranting jurisdiction]; *In re John M.* (2013) 217 Cal.App.4th 410, 419 [father's reckless driving due to domestic violence poses risk to child warranting jurisdiction].)

Father resists this conclusion with three arguments. First, he argues that none of the children have yet been hurt by his speeding and ignoring traffic lights. But a court's exertion of dependency jurisdiction need not wait for a child to be actually harmed—*risk* of harm is sufficient. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383, overruled on other grounds by *In re N.R.* (2023) 15 Cal.5th 520, 560, fn. 18; *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993; § 300, subd. (b).) Second, he argues that there was no risk of harm by the time of the jurisdiction hearing, as evidenced by the trial court's failure to remove the children from father's custody or to impose any "no driving with the children" condition. We reject the notion that the trial court's decision not to remove a child or to impose a lesser restriction somehow invalidates its otherwise supported exercise of jurisdiction. Third, he points to inconsistencies in Valerie's and

Zoey's accounts of how fast he was driving and whether he was running yellow lights or red lights; to the lack of reference to his erratic driving in previous reports to the Department; and to his own denial of any bad driving. Father is effectively asking us to reweigh the girls' credibility and to reweigh the evidence. We can do neither when reviewing for substantial evidence. (*In re Brianna S.* (2021) 60 Cal.App.5th 303, 316; *I.J.*, *supra*, 56 Cal.4th at p. 773.)

## II.    **Emotional Abuse**

Dependency jurisdiction is also appropriate over a child if that child "is suffering . . . or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent." (§ 300, subd. (c).) To assert jurisdiction on this basis, the child welfare agency must show "'(1) the offending parental conduct; (2) causation; and (3) serious emotional harm or the risk thereof, as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior.'" (*In re Roxanne B.* (2015) 234 Cal.App.4th 916, 921; *In re Ma.V.* (2021) 64 Cal.App.5th 11, 21-22.)

Substantial evidence supports the exertion of jurisdiction over Valerie and Zoey on this ground. Father yelled and screamed at the girls, called them names and verbally abused them, struck them or pulled their hair, drove dangerously when he was fighting with them, marginalized and mocked Valerie's ideations of self-harm, and threatened to kill himself if they did not express exuberance at the prospect of spending time with him. This caused the girls to fear him, caused Valerie to have nightmares, and caused both girls to suffer from depression, anxiety or both. Father's shifting of the blame indicates that the

girls remain at risk of further emotional abuse.  (See *In re L.O.* (2021) 67 Cal.App.5th 227, 240 [finding that risk of domestic violence would recur where parent failed to acknowledge past behavior]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].)  This evidence supports the juvenile court's finding of emotional abuse posing a risk of harm to the girls.  (Accord, *In re A.J.* (2011) 197 Cal.App.4th 1095, 1105 [mother's conduct caused child to suffer nightmares and fear the mother; sufficient evidence]; *In re D.B.* (2020) 48 Cal.App.5th 613, 618, 621-622 (*D.B.*) [father mocked and criticized child, causing child to have nightmares, be scared of father, and become nervous, distraught and depressed; sufficient evidence].)

Father resists this conclusion with three arguments.  First, he argues that not all five of the factors that *D.B.*, *supra*, 48 Cal.App.5th 613, cited in support of its finding of emotional abuse are present here.  We reject this argument because *D.B.* did not purport to hold that all five are required before an emotional abuse allegation may be upheld (*id.* at p. 621), and four of the five factors *are* present—namely, the parent's use of violence, the parent's systematic verbal abuse, the parent's impulsivity, and the parent's lack of insight.  (*Ibid.*)  The only one that is missing is the parent's racism, but we reject the notion that there can be no emotional abuse claim unless a parent also exhibits racism.  Second, father argues that both girls were already in therapy before the reckless driving incident that led to the Department's involvement, so he cannot be held responsible for their mental health struggles.  We disagree.  Both Valerie and Zoey reported a direct link between father's conduct and its effect on their mental health; that is sufficient.  Third, father argues that he no longer

poses a risk of harm to the girls because he is now open to participating in therapy and fatherhood classes.  Although that is a step in the right direction, it does not negate father's longstanding history of emotional abuse and consistent blame-shifting—both of which justified the exertion of dependency jurisdiction at the time of the jurisdictional hearing.[2]

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
MOOR


_____, J.
KIM (D.)

---

[2] In light of our analysis reaching the merits of father's arguments, we have no need to take judicial notice of documents indicating father's conduct has placed him on the Child Abuse Central Index.  We accordingly deny his request for judicial notice.