Filed 5/26/22  In re Alison C. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ALISON C., a Person Coming Under the Juvenile Court Law. | B315075 (Los Angeles County Super. Ct. No. 21CCJP01687A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. HEIDI C., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Steff R. Padilla, Judge Pro Tempore.  Affirmed.

Zaragoza Law Office and Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

When Heidi C. (mother) discovered that her teenage daughter, Alison C., was using a secret cell phone to exchange sexually explicit content and other disturbing images with males online, mother punished Alison by flogging her with a cell phone charging cord. This was not the first time mother used physical force to discipline Alison, despite knowing that her daughter was suffering with a years-long struggle of self-harming behavior. The juvenile court exerted dependency jurisdiction over Alison on numerous grounds and removed her from mother's care. Mother challenges these orders. Because the orders are supported by substantial evidence, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

I.  **Facts**

A.  ***Alison's early childhood in Guatemala***

Mother and Enrique C. are parents to Alison, born December 2007 in Guatemala.[1]

---

1    Alison's father is not a party to this appeal.

Mother has another child, Ian M., born October 2015. Because mother's notice of appeal in this case challenged the juvenile court's orders only as to Alison, we previously struck

2

Mother's life in Guatemala was full of hardship. She grew up in poverty, lived in a home made of dirt, bathed in a nearby river, and worked since the age of five. From the ages of six to 13, mother was sexually abused by her maternal uncle. She reported it to her mother (Alison's maternal grandmother), but the grandmother did not believe mother. Mother ran away from home as a teenager because maternal grandmother physically abused her.

When Alison was four years old, mother relocated to the United States, but left Alison in the care of maternal grandmother. Alison was sexually abused on three separate occasions under maternal grandmother's watch. She told maternal grandmother about the first incident, but maternal grandmother did nothing and instructed Alison not to tell mother. Because maternal grandmother did not take any action to protect Alison after the first incident, Alison did not report the second two incidents to maternal grandmother. Alison never disclosed the sexual abuse she suffered in Guatemala to mother; but when mother did learn of the incidents in May 2021, mother assumed that Alison was lying.

**B.    *Alison's well-being in mother's care***

Alison migrated to the United States to live with mother when she was 10 years old. Their relationship was strained at best.

1.    *Physical discipline*

Although mother usually disciplined Alison by restricting her use of electronics or sending Alison to her room, mother also used corporal punishment. If Alison did not do her chores or

---

from mother's appellate brief any arguments regarding the juvenile court's orders as to Ian.

homework, mother would hit her with a spatula, broom, shoe, or her hand, leaving marks or bruises. On multiple occasions, mother struck Alison hard enough to cause a black eye and busted lip, and then kept Alison home from school to conceal the obvious injuries.

Mother's greatest parenting challenge was controlling Alison's cell phone usage. Sometime in 2019, when Alison was around 12 years old, mother took Alison's cell phone away after discovering that Alison had been sending text messages to cult worshippers in Guatemala. She slapped Alison with an open hand on her face for talking to men on the phone. But Alison secretly saved her money to buy another cell phone. She used that phone to exchange disturbing content with strangers online, including videos and photographs of herself and others masturbating, of herself in her undergarments, of male genitalia, of mutilated bodies, and of people with satanic symbols.[2] Alison resorted to this kind of communication because she was "sad and lonely" and wanted to reach out to people, "specifically boys."

On April 9, 2021, mother found Alison's secret cell phone and saw the explicit material. Mother "lost it." She hit Alison with a cell phone charging cord and left red marks all over Alison's body. Alison accessed her virtual school computer program to contact a teacher for help; upon seeing photographs of Alison's injuries, the teacher contacted law enforcement. Later that same day, the teacher received a "weird" message from

---

[2]     Mother recognized Alison's voice on one video, but Alison claims she downloaded content from online of other females and pretended it was of her. Alison deleted all the material from the messaging app on her cell phone before it could be viewed by law enforcement.

4

Alison explaining that she had made the whole thing up. Mother had made Alison send the message as a cover-up.

        2.     *Emotional damage*

Alison's emotional distress manifested in other ways, as well.

In 2017, Alison's school notified mother that Alison had old, but still visible, cuts on her arms. The school recommended that Alison attend therapy, but mother did not enroll Alison in any services because mother's work schedule prevented her from doing so and because she thought Alison's school would provide the services. In 2018, Alison ingested four bottles of pills she found at home and she vomited, but did not tell mother. And in May 2021, Alison inflicted cuts on her forearms with a nail cutter. Throughout this time, mother would leave Alison home alone for days and overnight every week. Family friends refused to help watch Alison because of her "defiant" behavior.

Alison also was regularly truant from school. She was absent for nine full days and 128 class periods during eighth grade.

## II.    Procedural Background

### A.    *Petition*

In April 2021, the Los Angeles Department of Children and Family Services (the Department) filed a petition and, in May 2021, filed an amended petition asking the juvenile court to exert dependency jurisdiction over Alison based on (1) mother's physical abuse of Alison with the cell phone charging cord, which "endangers [Alison's] physical health and safety, and places [Alison] . . . at risk of serious physical harm, damage, danger and physical abuse" (thereby rendering jurisdiction appropriate under

Welfare and Institutions Code section 300, subdivision (b)(1));[3] (2) mother's inappropriate plan for Alison's care and supervision by leaving Alison in the care of maternal grandmother, who had failed to protect Alison (like mother before her) from sexual abuse, which "endangers [Alison's] physical health and safety, and places [Alison] . . . at risk of serious physical harm, damage, danger [and] sexual abuse" (thereby rendering jurisdiction appropriate under section 300, subdivisions (b)(1) and (d)); and (3) mother's "emotional[] abuse[]" of Alison "by minimizing [her] mental health concerns including self-harming behavior and suicidal ideations, as well as physically abusing [Alison]," which places Alison "at substantial risk of suffering serious emotional damage" (thereby rendering jurisdiction appropriate under section 300, subdivision (c)).[4]

## B.  *Detention*

Shortly after the original petition was filed, the juvenile court detained Alison from mother's custody, placed her in a foster home, and ordered visitation with mother.  The court noted that though it "understands and shares mother's concerns" that Alison "is communicating with inappropriate parties that place

---

[3]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[4]     The Department also alleged that all of these facts rendered jurisdiction appropriate under section 300, subdivisions (a) and (j), and further alleged that domestic violence between mother and a male companion as well as mother's inappropriate plan for Alison's care by leaving her alone and overnight for days at a time rendered jurisdiction appropriate under section 300, subdivisions (b)(1) and (j).  The juvenile court dismissed these allegations, so we do not discuss them further.

her life at risk," mother had handled the incident on April 9 "completely inappropriate[ly]" and had "clearly" engaged in "excessive" "abuse" or "discipline."

Initially, Alison did not want to visit with mother because she was "scared" of mother and feared mother would hit her again. Mother acknowledged she needed help learning how to parent Alison, particularly because mother had had no opportunity to learn by example.

## C.  *Jurisdiction and disposition*

In August 2021, the juvenile court sustained all of the allegations under section 300, subdivisions (b), (c), and (d).

By this time, Alison was in another foster home placement and was doing well in the home, at school, and in therapy. She did not want to talk, see, or reunify with mother and felt no connection with her.

In September 2021, the juvenile court held a disposition hearing. The court removed Alison from mother because "it would be disastrous to force her back."

## E.  *Appeal*

Mother filed this timely appeal.

## DISCUSSION

Mother argues that the juvenile court erred in (1) exerting dependency jurisdiction over Alison and (2) removing Alison from her custody. We review such orders for substantial evidence (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433 (*J.K.*)), although for the removal inquiry we ask whether there is evidence sufficient to sustain a finding by clear and convincing evidence. (*Ibid*.; *In re V.L.* (2020) 54 Cal.App.5th 147, 154-155).

We evaluate the sufficiency of the evidence supporting a juvenile court's jurisdictional and removal orders by asking

whether there is enough evidence in the record that is reasonable, credible, and of solid value that a reasonable trier of fact could reach the same conclusion as the juvenile court. (*In re K.B.* (2015) 239 Cal.App.4th 972, 979.) In so doing, we consider the record as a whole, and resolve all conflicts and draw all reasonable inferences to support the juvenile court's findings. (*In re R.T.* (2017) 3 Cal.5th 622, 633; *In re Lana S.* (2012) 207 Cal.App.4th 94, 103.)

## I. Jurisdiction
### A. *Impermissible physical discipline*
#### 1. *Governing law*

Under section 300, subdivision (b)(1), a juvenile court may exert dependency jurisdiction if, as pertinent here, a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" due to "the failure or inability of [her] parent . . . to adequately supervise or protect the child."

Because "'a parent has a right to reasonably discipline . . . her child and may administer reasonable punishment'" (*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 86), not all physical discipline constitutes "serious physical harm" for purposes of exercising dependency jurisdiction. Where the use of physical discipline falls on the spectrum between a permissible exercise of this parental right (thereby not giving rise to dependency jurisdiction) and an impermissible exercise of that right (thereby giving rise to dependency jurisdiction) depends on three considerations: "(1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necess[ary]' (that is, whether the discipline was 'warranted by the circumstances'); and (3)

'whether the amount of punishment was reasonable or excessive.'" (*In re D.M.* (2015) 242 Cal.App.4th 634, 641 (*D.M.*).)

If a parent's use of physical discipline was impermissible, the juvenile court must assess whether that discipline creates a substantial risk of serious physical harm at the time of the jurisdiction hearing. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396.) The focus is on *risk* of harm because a juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction." (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383 (*Kadence P.*), superseded by statute on other grounds as stated in *In re A.M.* (2020) 47 Cal.App.5th 303, 322.)

2.    *Analysis*

Applying the three considerations discussed above, the physical discipline mother inflicted on Alison in this case was unreasonable. To be sure, the juvenile court sympathized with the shock mother felt when she discovered Alison's alarming communications and, on that basis, ostensibly found mother's actions to be disciplinarily motivated (although mother's admission that she "lost it" would support a contrary finding). Substantial evidence nevertheless supports the juvenile court's further findings that striking Alison's body with a cell phone charging cord was not warranted by the circumstances and was excessive. To begin, mother has expressly conceded on appeal that her conduct was "excessive." And though mother may have felt hopeless in her parenting journey, Alison's conduct indicated a need for professional help, not a need for the infliction of physical harm.

This conclusion is consistent with the relevant case law and the dependency statutes. On the spectrum between facts deemed insufficient to warrant dependency jurisdiction (e.g., § 300, subd.

9

(a) ["serious physical harm" does not include "reasonable and age-appropriate spanking to the buttocks" so long as "there is no evidence of serious physical injury"]; *D.M.*, *supra*, 242 Cal.App.4th at p. 640 [holding that "exception to dependency jurisdiction for reasonable discipline" applies to all of section 300's subdivisions]; *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1191, 1201 [parent smacked child on butt with open hand]; *In re Isabella F.* (2014) 226 Cal.App.4th 128, 131-133, 138-139 (*Isabella F.*) [parent scratched daughter's face and ear with fingernails during one-time altercation]) and facts supporting jurisdiction on the basis of excessive physical discipline (e.g., *In re Mariah T.* (2008) 159 Cal.App.4th 428, 438-439 [parent hit three-year-old child on stomach with a belt, causing deep, purple bruises, when he refused to write a letter of the alphabet]; *In re David H.* (2008) 165 Cal.App.4th 1626, 1645 [parent hit son with belt and electric cord 21 times because he was misbehaving, leaving welts]; *J.K.*, *supra*, 174 Cal.App.4th at p. 1433 [parent struck daughter hard enough to dislocate her shoulder]; *In re A.E.* (2008) 168 Cal.App.4th 1, 3 [parent struck son with "hard objects, violently enough to leave black and blue bruises"]; *In re N.M.* (2011) 197 Cal.App.4th 159, 162-164, 169 (*N.M.*) [parent hit daughter with iron pipe on the leg, with a broom on the stomach, kicked her, hit her on the hand hard enough to cause bleeding, slapped her on the face]; *In re Cole C.* (2009) 174 Cal.App.4th 900, 916-917 [parent sprayed daughters with cold water, pulled their hair, and pressed ice packs against them]; *In re D.D.* (2019) 32 Cal.App.5th 985, 994 [parent placed hot chili peppers and soap in child's mouth, which caused child to scream hysterically]), mother's act in this case of repeatedly striking Alison with a cord

hard enough to cause welts falls clearly on the side of unreasonable and hence impermissible physical discipline.

Substantial evidence also supports the juvenile court's finding that Alison faced a substantial risk of serious physical harm at the time of the jurisdictional hearing in August 2021. The specific incident culminating in a referral to the Department occurred only four months prior and, more importantly, was not an isolated incident:  Alison reported that mother relied on physical discipline in the past but made her hide it, and mother acknowledged having previously used physical discipline on Alison that was severe enough to leave marks on her body.

Mother responds with what boils down to two arguments.

First, she argues that lashing Alison with the cell phone charging cord was justifiable given Alison's troubling misbehavior and because mother was at a loss of what to do.  We disagree.  As distressing as the situation was for mother, hitting her emotionally fragile 13-year-old daughter was unwarranted.

Second, mother argues that there was no risk of serious physical harm at the time of the jurisdiction hearing because physical discipline was not mother's ordinary mode of discipline, because Alison's claims to the contrary were not to be believed, and because mother had already attended 12 parenting class sessions.  This argument lacks merit because, at bottom, it attempts to minimize mother's impermissible style of disciplining Alison and thereby ignores the substantial risk of physical harm that still existed at the time of the jurisdiction hearing. Specifically, substantial evidence supports the finding, based on Alison's reporting, that mother regularly utilized physical discipline, including for Alison's more minor transgressions.  (Cf. *Isabella F.*, *supra*, 226 Cal.App.4th at p. 139 [no jurisdiction

11

where child "reported this was an isolated incident, and there is nothing in the record to suggest otherwise"].) We reject mother's invitation to reweigh this evidence and second-guess the juvenile court's determination of Alison's credibility. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992 ["Issues of fact and credibility are the province of the juvenile court and we neither reweigh the evidence nor exercise our independent judgment."]; *In re I.J.* (2013) 56 Cal.4th 766, 773 [same].) And although it is commendable that mother was actively participating in services to develop a more appropriate parenting style, the juvenile court nevertheless was permitted to view mother's past, excessive behavior as a "good predictor" of whether Alison remained at risk. (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)

**B.** **Serious emotional damage**

1. *Governing law*

Under section 300, subdivision (c), a juvenile court may exert dependency jurisdiction if the child "is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others." This jurisdictional ground authorizes intervention by the juvenile court in two situations: "(1) when parental action or inaction causes the emotional harm," that is, "when parental fault can be shown; and (2) when the child is suffering serious emotional damage due to no parental fault or neglect, but the parent . . . [is] unable [herself] to provide adequate mental health treatment." (*In re Roxanne B.* (2015) 234 Cal.App.4th 916, 921 (*Roxanne B.*).) In the first situation involving parental fault, the Department must prove (1) serious emotional damage suffered by the child, (2) offending parental conduct, and (3) causation. (*In re*

12

*Brison C.* (2000) 81 Cal.App.4th 1373, 1379; *Roxanne B.*, at p. 921.)

2. *Analysis*

Here, the juvenile court exercised jurisdiction over Alison under subdivision (c) of section 300 on the basis of parental fault—namely, that mother "emotionally abused" Alison "by minimizing [her] mental health concerns including self-harming behavior and suicidal ideations, as well as physically abusing" Alison, and that Alison's "self-harming behaviors are exacerbated by . . . mother's behaviors."  Substantial evidence supports this jurisdictional finding.

As to the first element of serious emotional damage, mother does not dispute (nor could she) that the damage manifested itself through Alison's acts of self-harm and turning to sexually explicit communications to cope with loneliness.

As to the second element of offending parental conduct, this is supported by the same evidence supporting the jurisdictional finding under subdivision (a) of section 300—namely, that mother exceeded reasonable parental discipline.  (See *Alexander K.* (1993) 14 Cal.App.4th 549, 559 ["the parental conduct branch of subdivision (c) seeks to protect against *abusive* behavior that results in severe emotional damage"].)  What is more, mother's failure to obtain needed mental health treatment for Alison also constitutes offending parental conduct.  (See *Roxanne B.*, *supra*, 234 Cal.App.4th at p. 923.)

As to the third element of causation, it can reasonably be inferred from the record that mother's inappropriate physical discipline coupled with her avoidance of the troubling issues Alison was facing were at least two causes of Alison's serious emotional damage (though there likely were more, including the

13

sexual abuse Alison suffered in Guatemala).  After mother was informed by Alison's school in 2017 that she had cuts on her arms and should attend therapy, mother took no action; the next year, Alison swallowed dozens of pills; the year after that, mother discovered disturbing text messages on Alison's phone and, rather than address the underlying issues, slapped Alison on the face; in 2021, mother lashed Alison with a cell phone charging cord instead of seeking mental health treatment to address Alison's upsetting conduct; and the next month, Alison turned to cutting herself again.  Moreover, when mother learned of the three incidents of sexual abuse Alison experienced as a child in Guatemala, mother's response was to brand Alison a liar.  In total, the juvenile court's conclusion that Alison's emotional damage was exacerbated by mother's behavior is amply supported.  (See *Roxanne B.*, *supra*, 234 Cal.App.4th at p. 923 [though "bullies, loneliness, or poor coping skills initiated the depression," the parents' failure to take the child's "emotional problems seriously" and "failure to obtain mental health services" caused her "depression to worsen and persist"].)

Mother levies two challenges in response.

First, mother claims that she and Alison simply had a complicated relationship after years apart, that her one-time abuse of Alison with a cell phone cord was evidence of mother's true concern for Alison's well-being, that mother understandably assumed Alison's school was providing therapy, and that mother now genuinely realizes she needs professional help learning how to parent.  Mother's rosier characterization of events does not change our conclusion.  At bottom, mother is again inviting us to reweigh the evidence.  This is something we may not do.

14

Second, mother takes issue with the inference of causation drawn from the timeline of events set forth above because she claims that she was unaware that Alison continued to exhibit serious emotional damage in 2018 when she ingested bottles of pills. There is reason to question mother's disclaimer of knowledge, as mother at some point started taking an inventory of all the pills in the house before she would leave, which supports an inference that she was aware that Alison might harm herself by ingesting those pills. But even if we accept mother's disclaimer, it is of no moment because mother took no remedial action for Alison at *other* times when mother did have knowledge that Alison was in emotional anguish; instead, mother used physical discipline and left Alison home alone.

### C. *Inappropriate plan for supervision led to sexual abuse*

The juvenile court also exerted jurisdiction over Alison under subdivisions (b)(1) and (j) of section 300 because mother's "inappropriate plan" in leaving Alison in maternal grandmother's care resulted in Alison "being sexually abused." We need not resolve this jurisdictional basis because a single jurisdictional ground is enough to support the exertion of dependency jurisdiction over a child, and here we have upheld two of the grounds found by the juvenile court. (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979; *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

## II. Removal

Once a juvenile court exerts dependency jurisdiction over a child, it may remove the child from her parent only if it finds, by clear and convincing evidence, that (1) "[t]here is or would be a substantial danger to the physical health, safety, protection, or

15

physical or emotional well-being of the [child] if the [child] were returned home," and (2) "there are no reasonable means" short of removal "by which the [child's] physical health can be protected." (§ 361, subd. (c)(1).)  The focus is on averting harm to the child. (*N.M.*, *supra*, 197 Cal.App.4th at pp. 169-170.)

Substantial evidence supports the juvenile court's removal order for the same reasons, discussed above, that Alison was at substantial risk of physical harm and emotional damage in mother's care.

Mother makes two arguments in response.

She argues that returning Alison to her care posed no substantial danger because mother had already acknowledged her mistakes (and, as a result, would not commit them again) and started taking parenting classes.  Mother's remorse and early efforts are commendable, but they do not erase the risk-laden dynamic between mother and Alison.  The juvenile court was at liberty to consider those past circumstances and the continuing danger they posed should Alison again be placed with mother. (*N.M.*, *supra*, 197 Cal.App.4th at p. 170; *In re D.B.* (2018) 26 Cal.App.5th 320, 332.)

Second, mother argues that reasonable means short of removal were available—namely, Alison could continue her therapy sessions while in mother's care.  We fail to see how this would be adequate, and mother's suggestion appears to be self-serving given she made the same suggestion to the juvenile court based on the concern that Alison's therapy was "alienat[ing]" mother.  Such continued rejection of Alison's need for mental and emotional treatment puts Alison's well-being at risk.

## DISPOSITION

The orders are affirmed.

16

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST